UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LYNDA CANEVA,

                              Plaintiff,

-against-
                                                                                         Case No.: 16-cv-02688 (CS)

WILMINGTON TRUST NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE FOR BNC MORTGAGE LOAN TRUST SERIES 2007-3; CITIBANK, N.A. AS TRUSTEE FOR BNC MORTGAGE LOAN TRUST 2007-3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-3; BNC MORTGAGE, INC., A DELAWARE CORPORATION; MORTGAGE ELECTRONIC RECORDING SYSTEMS, INC.; OCWEN LOAN SERVICING, LLC; CHASE HOME FINANCE LLC; and "JOHN DOE" 1-5, the last five names being fictitious, said parties intended being undisclosed, unnamed and unknown investors, participants, corporate or other entities, conduits, trustees, servicers, custodians and others, if any, having or claiming an interest in or lien upon the premises described in the complaint,
                                                                       **AFFIDAVIT IN SUPPORT**

                              Defendants.
-------------------------------------------------------------------X

STATE OF NEW YORK       )
                                   ) ss:
COUNTY OF WESTCHESTER  )

       LYNDA CANEVA, being duly sworn, deposes and says:

       1.      I am the Plaintiff in this action. I am over the age of eighteen years and make this Affidavit in support of my motion seeking an Order granting summary judgment in my favor against defendants Wilmington Trust National Association, as successor trustee to BNC Mortgage Loan Trust Series 2007-3 ("Wilmington"), Citibank N.A., as trustee for BNC Mortgage Loan Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3 ("Citibank") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants"): (1) declaring that an action to foreclose

on a certain mortgage dated April 4, 2007 and recorded in the Westchester County Clerk's Office in Control No. 471230068 on May 10, 2007 (the "April 4, 2007 Mortgage") against certain real property located at 99 Mount Tom Road a/k/a 99 Mt. Tom Road, New Rochelle, New York (the "Property") is barred by the applicable statute of limitations, CPRL § 213(4); (2) cancelling and discharging the said mortgage of record, pursuant to New York RPAPL § 1501(4); and (3) granting such other and further relief as to the Court seems just and proper. If sworn as a witness I can competently testify to the matters set forth herein. The statements set forth herein are true and correct to the best of my knowledge and belief.

2.  I own and reside in the Property that is the subject of the above-captioned action. A true and correct copy of the Deed, dated August 29, 2005 and recorded in the Westchester County Clerk's Office in Control No. 452840544 on October 25, 2005, by which Irma Collelo conveyed the Property to me, is annexed hereto as Exhibit 1.

3.  I am the named obligor under a note dated April 4, 2007 (the "April 4, 2007 Note"), payable to BNC Mortgage, Inc. ("BNC") in the principal amount of $850,000.00, and originally secured by the April 4, 2007 Mortgage between myself and Mortgage Electronic Recording Systems, Inc. ("MERS"), as nominee for BNC. True and correct copies of the April 4, 2007 Note and April 4, 2007 Mortgage are annexed hereto as Exhibits 2 and 3, respectively.[1]

4.  Upon information and belief, on or about April 5, 2010, the 2007 Note and Mortgage were allegedly assigned by MERS as nominee for BNC to Citibank (the "2010 Assignment").

---

[1] This action pertains to the discharge of April 4, 2007 Mortgage as a lien on the property, not the associated Note, because an action to foreclose the April 4, 2007 mortgage is time-barred. As set forth more fully in the accompanying Memorandum of Law, as a matter of statutory law, because an action to foreclose the April 4, 2007 Mortgage is time-barred it must be discharged of record regardless of whether the underlying indebtedness has been paid.

5.     The April 4, 2007 Note provides, in part, that:

(C) Notice of Default

If [Plaintiff is] in default, the Note Holder may send [Plaintiff] a written notice telling [Plaintiff] that if [she does] not pay the overdue amount by a certain date, the Note Holder may require [Plaintiff] to pay immediately the full amount of the Principal that has not been paid and all of the interest that [Plaintiff owes] on that amount. That date must be at least 30 days after the date on which the notice is mailed to [Plaintiff] or delivered by other means.

*See* Ex. 2, at § 7(C). There is no provision in the April 4, 2007 Note permitting the lender to unilaterally decelerate or reinstate the underlying indebtedness once accelerated. *See* Ex. 2, *passim*.

6.     Likewise, the April 4, 2007 Mortgage provides, in part, that:

22. Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that [Plaintiff] pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of [Plaintiff's] remaining rights in the Property and have the Property sold. At this sale the Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add reasonable attorneys' fees to the amount [Plaintiff] owe[s] Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) [Plaintiff] fail[s] to keep any promise made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to [Plaintiff], in the manner described in Section 15 of this Security Instrument, a notice that states:

3

    (1) The promise or agreement that [Plaintiff] failed to keep or the default that has occurred;

    (2) The action that [Plaintiff] must take to correct that default;

    (3) A date by which [Plaintiff] must correct that default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if [Plaintiff does] not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another person may acquire the Property by means of a Foreclosure and Sale;

    (5) That if [Plaintiff] meet[s] the conditions stated in Section 19 of this Security Instrument, [Plaintiff] will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That [Plaintiff has] the right in any lawsuit for Foreclosure and Sale to argue that [Plaintiff] did keep [her] promises and agreements under the Note and under this Security Instrument, and to present any other defenses that [Plaintiff] may have; and

  (c) [Plaintiff] do[es] not correct the default stated in the notice from the Lender by the date stated in that notice.

*See* Ex. 3, at § 22.

7. There is no provision in the April 4, 2007 Mortgage permitting the lender to unilaterally decelerate or reinstate the underlying indebtedness once accelerated. *See* Ex. 3, *passim*.

8. On or about April 8, 2010, a foreclosure action was commenced by Citibank against me by the filing of a summons and complaint, dated April 7, 2010, in the Supreme Court of the State of New York, County of Westchester, bearing Index No. 9556/2010 (the "2010 Foreclosure Action") seeking to foreclose on the April 4, 2007 Mortgage. A true and correct copy of the Summons and Complaint filed in the 2010 Foreclosure Action is annexed hereto as Exhibit 4.

9. By commencing the 2010 Foreclosure Action, Citibank elected to accelerate the indebtedness underlying the April 4, 2007 Mortgage, meaning that the entire outstanding amount under the April 4, 2007 Note and April 4, 2007 Mortgage was due, and that I was no longer entitled to make monthly installment payments. The foregoing is reflected in the provisions of the April 4, 2007 Note and April 4, 2007 Mortgage. *See* Exs. 2, 3 and 10.

10. In reliance on Citibank's election to accelerate the indebtedness underlying the April 4, 2007 Mortgage, I have not made any installment payments since approximately September of 2009.

11. By Notice of Motion, dated July 9, 2014, Citibank moved for summary judgment against me in the 2010 Foreclosure Action. A true and correct copy of Citibank's Notice of Motion is annexed hereto as Exhibit 5.

12. By Decision and Order dated March 30, 2015, the Honorable Sam D. Walker, J.S.C., denied Citibank's motion for summary judgment, finding that Citibank failed to establish that it had served me with a Notice of Default and Notice pursuant to RPAPL § 1304, conditions precedent to a mortgage foreclosure action. A true and correct copy of the March 30, 2015 Decision and Order is annexed hereto as Exhibit 6.

13. By Notice of Motion, dated June 24, 2015, Citibank moved, *inter alia*, to discontinue the 2010 Foreclosure Action, without prejudice. A true and correct copy of Citibank's Notice of Motion and supporting Affirmation of Jacqueline Muratore, Esq., is annexed hereto as Exhibit 7.

14. In its motion papers, Citibank did not inform the court of any intention to revoke, rescind or nullify its prior acceleration of the underlying loan. To the contrary, Citibank asserted that it sought a discontinuance solely to cure the defects of the 2010 Foreclosure action and

intended to proceed with another foreclosure action based upon the same accelerated debt. Specifically, Citibank asserted that:

> [Citibank] seeks to discontinue this action without prejudice and cancel the Notice of Pendency because [Citibank] is unable to proceed with its foreclosure action. This Court has found that the proof submitted by [Citibank] regarding its Notice of Default and 90-day Pre-Foreclosure Notices send to the Defendants, to be insufficient. [Citibank], at this time, is unable to obtain additional proof from the individuals that sent such notices to the Defendants that would further support [Citibank's] position that it took all necessary steps to foreclose on the Mortgage. Accordingly, **[Citibank] requests that this action be discontinued without prejudice in order for [Citibank] to recommence this action once a new Notice of Default and 90-day Pre-Foreclosure Notice is sent to the Defendant**.

Ex. 7, at ¶ 24 (emphasis added).

15. By Decision and Order, dated December 21, 2015, and entered in the office of the Westchester County Clerk on December 23, 2015, the Honorable Sam D. Walker, J.S.C., granted Citibank's motion to discontinue the 2010 Foreclosure Action, without prejudice. A true and correct copy of the December 21, 2015 Decision and Order is annexed hereto as Exhibit 8.

16. In granting Citibank's motion, the state court recognized that Citibank "has plainly stated that the reason it is seeking a discontinuance is that despite its best efforts, it has been unable to obtain additional proof to establish service of the notice of default and 90-day notice. Therefore, [Citibank] **seeks to discontinue the action and resend the notices**." *See* Ex. 8, at p. 4 (emphasis added).

17. I have never entered into any settlement with any of the Defendants reinstating the loan, nor was any trial modification attempted and payments made and accepted thereunder.

18. I have never stated or offered to reinstate the loan, and no payments were made or accepted subsequent to the acceleration of the indebtedness underlying the April 4, 2007 Mortgage. Indeed, I have not paid any installment payments due under the April 4, 2007 Mortgage, or otherwise, since approximately September 2009.

19. After discontinuance of the 2010 Foreclosure Action, on or about December 29, 2015, I received from Ocwen an account statement (the "December 29, 2015 Statement") indicating, *inter alia*, an amount then due under the April 4, 2007 Mortgage of $1,514,817.23. A true and correct copy of the December 29, 2015 Statement is annexed hereto as Exhibit 9.

20. As an "Explanation of Amount Due" the December 29, 2015 Statement provides:

| | |
|---|---:|
| Principal | $844,641.40 |
| Interest | $490,591.97 |
| Escrow Advance | $172,570.91 |
| Past Due Fees/Other Charges | $8,091.41 |
| Unapplied Funds** | -$1,078.46 |
| Total Amount Due | $1,514,817.23 |
| *Alternative Payment – Reinstatement* | |
| Reinstatement Amount (as of 12/29/15) | $690,694.46 |

Ex. 9., at p.1.

21. The December 29, 2015 Statement further confirms that, "**Your loan has been accelerated** (the past due balance, all fees, and your remaining principal balance is now due in full." *Id.* (emphasis added).

22. I have never received **any** letter or other communication specifically stating that any previous acceleration of my loan was revoked, withdrawn or nullified.

23. Based upon the unclear and equivocal communications to me concerning the indebtedness underlying the April 4, 2007 Mortgage following the discontinuance of the 2010 Foreclosure Action, I could not even say one way or another whether the amount that Defendants claimed to be due from me was more or less than $1 million. Indeed, they are irreconcilable. *See* Ex. 9, Ex. 11 and Ex. 20.

24. On or about January 11, 2016, Ocwen sent me a Notice of Default of the April 4, 2007 Mortgage and 90-Day Notice. True and correct copies of the Notice of Default and 90-Day Notice are annexed hereto as Exhibit 10.

25. Thereafter, Ocwen sent me monthly delinquency notices reflecting various total amounts due, none of which specifically state that the prior acceleration of my loan had been revoked, withdrawn or nullified, or that my right to make monthly payments had been restored. True and correct copies of the delinquency notices I received are annexed hereto as Exhibit 11.

26. Based upon these notices, as well as the December 29, 2015 Statement, it was unclear to me what amount Defendants were actually claiming to be due and owing.

27. It is my understanding that, on or about May 24, 2016, Defendant Wilmington, allegedly as successor in interest to Citibank, commenced a second foreclosure action against me entitled *Wilmington Trust National Association, as Successor Trustee to Citibank, N.A., as Trustee for BNC Mortgage Loan Trust Series 2007-3, Mortgage Pass-Through Certificates, Series 2007-3 v. Lynda Caneva*, Westchester County Index Number 57319/2016 (the "2016 Foreclosure Action").

28. I was never personally served with the Summons and Complaint in the 2016 Foreclosure Action, which I understand was subsequently dismissed by the court for that very reason.

29. To my knowledge, no subsequent foreclosure action has been initiated against me by Defendants.

                                                               _____
                                                               LYNDA CANEVA

Sworn to before me this
22nd day of June, 2018

_____
Notary Public

JOANNE L. TREVETT FEIL
Notary Public, State of New York
No. 01TR4985287
Qualified in Westchester County
Commission Expires August 12, 2021

8