UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
LYNDA CANEVA,

                                    Plaintiff,

- against -                                                                      Case No.: 16-cv-02688 (CS)

WILMINGTON TRUST NATIONAL ASSOCIATION,
AS SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS
TRUSTEE FOR BNC MORTGAGE LOAN TRUST
SERIES 2007-3; CITIBANK, N.A. AS TRUSTEE FOR
BNC MORTGAGE LOAN TRUST 2007-3, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-3;
BNC MORTGAGE, INC., A DELAWARE
CORPORATION; MORTGAGE ELECTRONIC
RECORDING SYSTEMS, INC.; OCWEN LOAN
SERVICING, LLC; CHASE HOME FINANCE LLC; and
"JOHN DOE" 1-5, the last five names being fictitious, said
parties intended being undisclosed, unnamed and unknown
investors, participants, corporate or other entities, conduits,
trustees, servicers, custodians and others, if any, having or
claiming an interest in or lien upon the premises described
in the complaint,

                                    Defendants.

--------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**


BELOWICH & WALSH LLP
Daniel G. Walsh (DW-7777)
Joanna Sandolo (JS-9187)
140 Grand Street, 8th Floor
White Plains, New York 10601
(914) 265-6068
*Attorneys for Plaintiff Lynda Caneva*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 5

ARGUMENT .............................................................................................................. 12

STATEMENT OF APPLICABLE LEGAL STANDARDS ........................................ 12

    Summary Judgment Standard ........................................................................... 12

    The Applicable Statute of Limitations ............................................................. 13

POINT I:  THE UNDISPUTED FACTS ESTABLISH THAT AN ACTION TO
          FORECLOSE ON THE APRIL 4, 2007 MORTGAGE IS TIME BARRED ............ 15

    A.  An Action To Foreclose On The April 4, 2007 Mortgage Is Time Barred ............... 15

    B.  Defendants Are Estopped From Arguing That The Discontinuance Of
       The 2010 Foreclosure Action Was Intended To Revoke Citibank's Prior
       Acceleration Of The Indebtedness Underlying The April 4, 2007 Mortgage .......... 16

    C.  Discontinuance Of The 2010 Foreclosure Action Is Insufficient To Establish
       An Affirmative Act Clearly And Unequivocally Revoking Acceleration ............... 19

POINT II:  PLAINTIFF IS ENTITLED TO AN ORDER CANCELLING
           AND DISCHARGING THE APRIL 4, 2007 MORTGAGE ..................................... 23

CONCLUSION ............................................................................................................ 24

| Cases | Page No. |
|---|---|

*ACE Sec. Corp. v. DB Structured Prod., Inc.*,
25 N.Y.3d 581 (2015) ............................................................ 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................. 12

*Arena Contr. Co. v. Sackaris Sons*,
282 A.D.2d 489 (2d Dep't 2001)................................................ 18

*Bank of New York Mellon v. Slavin*,
54 Misc. 3d 311 (N.Y. Sup. Ct. Rensselaer Cty. 2016) ............................ 14, 21

*Barberan v. Nationpoint*,
706 F.Supp.2d 408 (S.D.N.Y. 2010)............................................. 23

*Bates v. Long Island R.R. Co.*,
997 F.2d 1028 (2d Cir. 1993)................................................... 17, 18

*BSD 265 LLC v. HSBC Bank USA N.A*,
No. 504656/16, 2017 WL 2778454
(N.Y. Sup. Ct. Kings Cty., June 27, 2017) .................................... 19, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................. 12

*Citimortgage v. Ramirez*,
59 Misc.3d 1212(A) (N.Y. Sup. Ct., Schenectady Cty. Apr. 5, 2018) .......... 14, 15, 16, 22

*Clayton Nat., Inc. v. Guldi*,
307 A.D.2d 982 (2d Dep't 2003) ................................................ 14, 15

*Corrado v. Petrone*,
139 A.D.2d 483 (2d Dep't 1988) ............................................... 23

*Costa v. Deutche Bank Natl. Trust Co.*,
247 F.Supp.3d 329 (S.D.N.Y. 2017)............................................. 13, 23

*Davis v. Citibank, N.A.*,
116 A.D.3d 819 (2d Dep't 2014) ................................................ 16

*DelNorte v. Worldbusiness*,
No. 14 Civ. 10143, 2017 WL 4334005 (S.D.N.Y. Apr. 5, 2017)..................... 12

ii

*Deutsche Bank National Trust Company v. Gambino,*
    153 A.D.3d 1232 (2d Dep't 2017) ................................................................. 13

*EMC Mortgage Corp. v. Patella,*
    279 A.D.2d 604 (2d Dep't 2001) ............................................................. 13, 14

*Federal Natl. Mtge. Assn. v. Mebane*,
    208 A.D.2d 892 (2d Dep't 1994) ............................................................. 13, 22

*Festinger v. Edrich,*
    32 A.D.3d 412 (2d Dep't 2006) ............................................................... 16, 18

*Indian Harbor Ins. Co. v. Dorit Baxter Skin Care, Inc.,*
    430 F. Supp. 2d 183 (S.D.N.Y. 2006) ............................................................. 12

*John J. Krasser & Co. v. City of New York*,
    46 N.Y.2d 544 (1979) ...................................................................................... 13

*Kashipour v. Wilmington Sav. Fund Socy.*, FSB,
    144 A.D.3d 985 (2d Dep't 2016) ............................................................. 14, 15

*Lanvin v. Elmakiss,*
    302 A.D.2d 638 (3d Dep't 2003) ............................................................. 14, 15

*Lightfoot v. Union Carbide Corp*.,
    110 F.3d 898 (2d Cir. 1997).............................................................................. 12

*Matter of Edson v. Southold Town Zoning Bd. of Appeals,*
    102 A.D.3d 687 (2d Dep't 2013) .................................................................... 16

*Mortgage Electronic Registration Systems, Inc. v. Rambaran,*
    97 A.D.3d 802 (2d Dep't 2012)....................................................................... 18

*Simon v. Safelight Glass Corp.,*
    128 F.3d 68 (2d Cir. 1997)........................................................................ 16, 17

*U.S. Bank N.A. v. Barnett*,
    151 A.D.3d 791 (2d Dep't 2017) .................................................................... 15

*U.S. Bank N.A. v. Crockett*,
    55 Misc. 3d 1222(A) (N.Y. Sup. Ct. Kings Cty. 2017) ............................. 14, 21

*US Bank National Association v. Szoffer*,
    58 Misc.3d 1220(A) (N.Y. Sup. Ct., Rockland Cty. 2017) ........................ 19, 20

*Wells Fargo Bank, N.A. v. Burke*,
    94 A.D.3d 980 (2d Dep't 2012) ................................................................. 13, 14

*Zucker v. HSBC Bank, USA*,
    17-CV-2192, 2018 WL 2048880 (E.D.N.Y. May 2, 2018) ............................................ 19

## **Other Authorities**

CPLR § 205 ........................................................................................................................ 11

CPRL § 213 ............................................................................................................ 1, 2, 4, 11, 23

CPLR § 3211 ..................................................................................................................... 10

Fed. R. Civ. P. 56 ................................................................................................... 1, 11, 12

General Obligations Law § 17-105 ............................................................................... 20

RPAPL § 1304 ................................................................................................. 2, 7, 9, 21

RPAPL § 1501 ............................................................................................................... *passim*

RPAPL § 1515 ................................................................................................................. 23

Plaintiff Lynda Caneva ("Plaintiff"), by and through her attorneys, Belowich & Walsh LLP, hereby moves, pursuant to Fed. R. Civ. P. 56, for an Order granting summary judgment in her favor against defendants Wilmington Trust National Association, as successor trustee to BNC Mortgage Loan Trust Series 2007-3 ("Wilmington"), Citibank N.A., as trustee for BNC Mortgage Loan Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3 ("Citibank") and Ocwen Loan Servicing, LLC ("Ocwen") (together with Wilmington and Citibank, "Defendants")[1]: (1) declaring that an action to foreclose on a certain mortgage, dated April 4, 2007, and recorded in the Westchester County Clerk's Office in Control No. 471230068 on May 10, 2007 (the "April 4, 2007 Mortgage") against certain real property located at 99 Mount Tom Road a/k/a 99 Mt. Tom Road, New Rochelle, New York (the "Property") is barred by the applicable statute of limitations, CPLR § 213(4); (2) cancelling and discharging the time-barred April 4, 2007 Mortgage of record, pursuant to New York RPAPL § 1501(4); and (3) granting Plaintiff such other and further relief as to the Court seems just and proper.

## PRELIMINARY STATEMENT

By this action, Plaintiff seeks the closure the statute of limitations is designed to provide, ending repeated, failed attempts to foreclose on the April 4, 2007 Mortgage against the Property. Defendants are (upon information and belief) the current and former holders and servicer of the April 4, 2007 Mortgage and associated Note. As established herein, any action to foreclose the aforesaid Mortgage accrued almost a decade ago and has been time-barred since 2016. As a matter

---

[1] Mortgage Electronic Recording Systems, Inc. ("MERS"), BNC Mortgage, Inc. ("BNC") and Chase Home Finance LLC ("Chase") were named as defendants in the Complaint filed in this action. However, Plaintiff's Amended Complaint, filed on October 19, 2016 (Dkt. #65), does not assert any causes of action against MERS, BNC or Chase. Accordingly, this action was discontinued as to those defendants on October 19, 2016.

of statutory law, the April 4, 2007 Mortgage must therefore be discharged of record against the Property.

It is undisputed that an action to foreclose on the April 4, 2007 Mortgage was commenced on or about April 8, 2010, thereby accelerating the underlying indebtedness and commencing the applicable six-year statute of limitations, pursuant to CPLR § 213(4). It is undisputed that the action was prosecuted through summary judgment, but ultimately was discontinued on or about December 21, 2015, because the plaintiff therein had not sufficiently established – and would never be able to establish – that it had served Plaintiff with Notice of Default and Notice pursuant to RPAPL § 1304 (conditions precedent to a foreclosure action). Thus, after five years of litigation, the action was discontinued because the plaintiff therein had failed to comply with the law and sought to re-commence a foreclosure action after complying with the required conditions precedent.

At that time, Defendant Citibank argued to the New York State Supreme Court that it sought discontinuance solely to resend the required Notice of Default and Notice pursuant to RPAPL § 1304, and then to refile its foreclosure action. Citibank never stated that it intended to revoke, rescind or withdraw its acceleration of the debt underlying the April 4, 2007 Mortgage. In granting Citibank's request to discontinue the foreclosure action, the New York State Supreme Court expressly determined that the purpose of the discontinuance was as represented by Citibank, notably not to revoke, rescind or withdraw its acceleration of the debt underlying the April 4, 2007 Mortgage.

Shortly after the 2010 Foreclosure Action was discontinued, and consistent with the prior acceleration of the debt underlying the April 4, 2007 Mortgage and Citibank's representations to

the state court, Plaintiff received an account statement confirming that "your loan has been accelerated".

There is no provision in the April 4, 2007 Mortgage or Note permitting the lender thereunder to unilaterally revoke, rescind or withdraw an acceleration of the underlying indebtedness. In any event, none of the Defendants ever did so in a clear and unequivocal manner as required by law. Defendants have not produced any evidence they clearly and unequivocally informed Plaintiff that they even intended to revoke, rescind or withdraw acceleration of the underlying indebtedness, let alone that they validly did so unilaterally. It is undisputed there has been no loan modification, no payments made or accepted, and no other agreement between the parties whereby the indebtedness underlying the April 4, 2007 Mortgage was reinstated.

Subsequently, the confusion caused by Defendants' and/or their agents' continued regarding the status of the indebtedness, rendering it impossible to discern whether the indebtedness was intended to be accelerated or not, or even how much was claimed to be due and owing.

It is also undisputed that, as a result of the 2010 acceleration of the underlying indebtedness, Plaintiff has been denied her right to make monthly installment payments under the April 4, 2007 Mortgage and Note and thus has not been able to make any payments since acceleration of the debt, while the interest, fees and escrow balance on the loan have continued to grow. Accordingly, Plaintiff has changed her position in reliance upon Citibank's election to accelerate the underlying indebtedness.

On or about May 24, 2016, Defendants commenced another failed attempt to foreclose on Plaintiff's mortgage. This action was dismissed for lack of personal jurisdiction over Plaintiff based upon abject failure to effectuate service of process on Plaintiff.

No holder of the April 4, 2007 Mortgage and Note has been able to successfully prosecute a foreclosure action within the prescribed six-year period, and the time to do so has expired. The undisputed facts amply demonstrate that a cause of action to foreclose on the said Mortgage accrued, at the latest, on April 8, 2010, and was required to be commenced by April 8, 2016, at which time the cause of action expired.

Now that the time to commence a foreclosure action has indisputably expired, Defendants seek to "re-cast" their discontinuance of the 2010 Foreclosure Action as a revocation of the acceleration of the debt underlying the April 4, 2007 Mortgage and thereby "re-set" the statute of limitations. As has been established herein, Defendants are estopped from adopting this "convenient" position now, which is contrary to Citibank's position adopted in the 2010 Foreclosure Action, the facts and the law.

As a matter of law, where, as here, the time within which to foreclose a mortgage has expired, the owner of the subject premises is entitled to a declaration that the mortgage is discharged from the premises. Plaintiff is therefore entitled to closure, in the form of an award of summary judgment in her favor: (1) declaring that an action to foreclose on the April 4, 2007 Mortgage against the Property is barred by the applicable statute of limitations, CPRL § 213(4); (2) cancelling and discharging the time-barred April 4, 2007 Mortgage of record, pursuant to New York RPAPL § 1501(4); and (3) granting Plaintiff such other and further relief as to the Court seems just and proper.

## STATEMENT OF FACTS

Plaintiff owns and resides in the Property that is the subject of this action.  *See* S.M.F., at ¶ 1.[2]  Plaintiff is the named obligor under a note dated April 4, 2007 (the "April 4, 2007 Note"), payable to BNC Mortgage, Inc. ("BNC") in the principal amount of $850,000.00, and originally secured by the April 4, 2007 Mortgage between Plaintiff and Mortgage Electronic Recording Systems, Inc. ("MERS"), as nominee for BNC, and recorded in the Westchester County Clerk's Office in Control No. 471230068 on May 10, 2007.  *See* S.M.F., at ¶ 2 and Exs. 2 & 3.[3]

Upon information and belief, on or about April 5, 2010, the 2007 Note and Mortgage were assigned by MERS as nominee for BNC to Citibank (the "2010 Assignment").  S.M.F., at ¶ 3.

The April 4, 2007 Note provides, in part, that:

(C) Notice of Default

If [Plaintiff is] in default, the Note Holder may send [Plaintiff] a written notice telling [Plaintiff] that if [she does] not pay the overdue amount by a certain date, the Note Holder may require [Plaintiff] to pay immediately the full amount of the Principal that has not been paid and all of the interest that [Plaintiff owes] on that amount.  That date must be at least 30 days after the date on which the notice is mailed to [Plaintiff] or delivered by other means.

*See* Ex. 2, at § 7(C).  There is no provision in the April 4, 2007 Note permitting the lender to unilaterally decelerate or reinstate the underlying indebtedness once accelerated.  *See* Ex. 2, *passim*.

Likewise, the April 4, 2007 Mortgage provides, in part, that:

22.   Lender's Rights if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that

---

[2] All references to "S.M.F." are to Plaintiff's Rule 56.1 Statement of Material Undisputed Facts submitted in support of her motion for summary judgment.

[3] Exhibits 1 to 11 referenced herein are annexed to the accompanying Affidavit of Lynda Caneva dated June 22, 2018.  Exhibits 12 to 20referenced herein are annexed to the accompanying Declaration of Joanna Sandolo, dated June 25, 2018 (the "Sandolo Decl.").

[Plaintiff] pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of [Plaintiff's] remaining rights in the Property and have the Property sold. At this sale the Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add reasonable attorneys' fees to the amount [Plaintiff] owe[s] Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) [Plaintiff] fail[s] to keep any promise made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to [Plaintiff], in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that [Plaintiff] failed to keep or the default that has occurred;

(2) The action that [Plaintiff] must take to correct that default;

(3) A date by which [Plaintiff] must correct that default. That date will be at least 30 days from the date on which the notice is given;

(4) That if [Plaintiff does] not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another person may acquire the Property by means of a Foreclosure and Sale;

(5) That if [Plaintiff] meet[s] the conditions stated in Section 19 of this Security Instrument, [Plaintiff] will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That [Plaintiff has] the right in any lawsuit for Foreclosure and Sale to argue that [Plaintiff] did keep [her] promises and agreements under the Note and under this Security Instrument, and to present any other defenses that [Plaintiff] may have; and

      (c) [Plaintiff] do[es] not correct the default stated in the notice from the Lender
         by the date stated in that notice.

*See* Ex. 3, at § 22.   There is no provision in the April 4, 2007 Mortgage permitting the lender to unilaterally decelerate or reinstate the underlying indebtedness once accelerated.   *See* Ex. 3, *passim*.

      On or about April 8, 2010, a foreclosure action was commenced by Citibank against Plaintiff by the filing of a summons and complaint, dated April 7, 2010, in the Supreme Court of the State of New York, County of Westchester, bearing Index No. 9556/2010 (the "2010 Foreclosure Action") seeking to foreclose on the April 4, 2007 Mortgage.   *See* S.M.F., at ¶ 8 and Ex. 3.   By commencing the 2010 Foreclosure Action, Citibank elected to accelerate the indebtedness underlying the April 4, 2007 Mortgage, meaning that the entire outstanding amount under the April 4, 2007 Note and April 4, 2007 Mortgage was due, and the Plaintiff was no longer entitled to make monthly installment payments thereunder.   *See* S.M.F., ¶ 9 and Exs. 1, 2 and 10.

      By Notice of Motion, dated July 9, 2014, Citibank moved for summary judgment against Plaintiff in the 2010 Foreclosure Action.   *See* S.M.F., at ¶ 11 and Ex. 5.   By Decision and Order dated March 30, 2015, the Honorable Sam D. Walker, J.S.C., denied Citibank's motion for summary judgment, finding that Citibank failed to establish that it had served Plaintiff with a Notice of Default and Notice pursuant to RPAPL § 1304, conditions precedent to a mortgage foreclosure action.   *See* S.M.F., at ¶ 12 and Ex. 6.

      Prompted by the state court's determination that Citibank had failed to establish conditions precedent to a foreclosure action, by Notice of Motion, dated June 24, 2015, Citibank moved, *inter alia*, to discontinue the 2010 Foreclosure Action, without prejudice.   *See* S.M.F., at ¶ 13 and Ex. 7. Critically, in its motion papers, Citibank did not inform the state court of any supposed intention to revoke, rescind or withdraw its prior acceleration of the underlying loan.   To the contrary,

7

Citibank affirmatively represented to that court therein that it sought a discontinuance solely to cure the defects pointed out in the court's denial of summary judgment, and intended to proceed with another foreclosure action based upon the same acceleration of the indebtedness underlying the April 4, 2007 Mortgage.

Specifically, Citibank asserted that:

> [Citibank] seeks to discontinue this action without prejudice and cancel the Notice of Pendency because [Citibank] is unable to proceed with its foreclosure action. This Court has found that the proof submitted by [Citibank] regarding its Notice of Default and 90-day Pre-Foreclosure Notices send to the Defendants, to be insufficient. [Citibank], at this time, is unable to obtain additional proof from the individuals that sent such notices to the Defendants that would further support [Citibank's] position that it took all necessary steps to foreclose on the Mortgage. Accordingly, [**Citibank] requests that this action be discontinued without prejudice in order for [Citibank] to recommence this action once a new Notice of Default and 90-day Pre-Foreclosure Notice is sent to the Defendant**.

S.M.F., at ¶ 15 and Ex. 7, at ¶ 24 (emphasis added).

By Decision and Order, dated December 21, 2015, and entered in the office of the Westchester County Clerk on December 23, 2015, the Honorable Sam D. Walker, J.S.C., granted Citibank's motion to discontinue the 2010 Foreclosure Action, without prejudice. *See* S.M.F., at ¶ 16 and Ex. 8. In granting Citibank's motion, the state court recognized that Citibank "**has plainly stated that the reason it is seeking a discontinuance is that despite its best efforts, it has been unable to obtain additional proof to establish service of the notice of default and 90-day notice. Therefore, [Citibank] seeks to discontinue the action and resend the notices**." *See* Ex. 8, at p. 4 (emphasis added).

Notably, neither Citibank's moving papers nor the state court's decision make any mention of revoking, rescinding or withdrawing Citibank's acceleration of the indebtedness underlying the April 4, 2007 Mortgage. Rather, they make clear that it was Citibank's intention to proceed with

a new foreclosure action on the same accelerated debt after re-sending the required Notice of Default and Notice pursuant to RPAPL § 1304.

Moreover, it is undisputed that after the acceleration of the debt underlying the April 4, 2007 Mortgage, the parties never entered into any settlement reinstating the loan, nor was any trial modification attempted and payments made and accepted thereunder. Plaintiff has not paid any installment payments due under the April 4, 2007 Mortgage, or otherwise, since approximately September 2009. *See* S.M.F., at ¶¶ 18-19.

After discontinuance of the 2010 Foreclosure Action, on or about December 29, 2015, Ocwen sent Plaintiff an account statement (the "December 29, 2015 Statement") confirming the debt remained accelerated and indicating, *inter alia*, an amount then due under the April 4, 2007 Mortgage of $1,514,817.23. *See* S.M.F., at ¶ 20 and Ex. 9. As an "Explanation of Amount Due" the December 29, 2015 Statement provides:

| | |
|---|---|
| Principal | $844,641.40 |
| Interest | $490,591.97 |
| Escrow Advance | $172,570.91 |
| Past Due Fees/Other Charges | $8,091.41 |
| Unapplied Funds** | -$1,078.46 |
| Total Amount Due | $1,514,817.23 |
| *Alternative Payment – Reinstatement* | |
| Reinstatement Amount (as of 12/29/15) | $690,694.46 |

Ex. 9., at p.1. The December 29, 2015 Statement explicitly confirms that, "**Your loan has been accelerated** (the past due balance, all fees, and your remaining principal balance is now due in full." *Id*. (emphasis added).

It is undisputed that none of the Defendants ever sent Plaintiff any letter or other communication specifically stating that any previous acceleration of her loan was revoked, rescinded or withdrawn. *See* S.M.F., at ¶ 23 and Exs. 9, 10 and 11.

On or about January 11, 2016, Ocwen sent Plaintiff a new Notice of Default of the April 4, 2007 Mortgage and 90-Day Notice. *See* S.M.F., at ¶ 24 and Ex. 10. Ocwen thereafter sent Plaintiff monthly delinquency notices reflecting various total amounts due, none of which specifically state that the indebtedness underlying the April 4, 2007 Mortgage had been decelerated, or that her right to make monthly payments had been restored. *See* S.M.F., at ¶ 25 and Ex. 11. Thus, Plaintiff made no payments.

On or about May 24, 2016, Wilmington, allegedly as successor in interest to Citibank, commenced a second foreclosure action against Plaintiff entitled *Wilmington Trust National Association, as Successor Trustee to Citibank, N.A., as Trustee for BNC Mortgage Loan Trust Series 2007-3, Mortgage Pass-Through Certificates, Series 2007-3 v. Lynda Caneva*, Westchester County Index Number 57319/2016 (the "2016 Foreclosure Action"). *See* S.M.F., at ¶ 26 and Ex. 12.

By Notice of Motion, dated July 11, 2016, Plaintiff moved, pursuant to CPLR § 3211(a)(8) to dismiss the 2016 Foreclosure Action for lack of personal jurisdiction due to defective service of process. *See* S.M.F., at ¶ 27 and Ex. 13. By Decision and Order, dated November 7, 2016 and entered in the Office of the Westchester County Clerk on November 15, 2016, the Honorable Linda S. Jamieson, J.S.C., ordered that Plaintiff (defendant therein) had alleged sufficient facts to warrant a traverse hearing. *See* S.M.F., at ¶ 28 and Ex. 14.

On or about February 16, 2017, the parties to the 2016 Foreclosure Action appeared before the Honorable Mary H. Smith, J.S.C., at which time Justice Smith dismissed the 2016 Foreclosure Action for lack of personal jurisdiction. Justice Smith so-ordered the transcript of the February 16, 2017 proceedings on or about August 25, 2017. *See* S.M.F., at ¶ 29 and Ex. 15.

**Procedural History**

Plaintiff initiated this action on or about April 19, 2016 by filing her Verified Complaint to Quiet Title and for Declaratory Relief (the "Complaint").  *See* Ex. 16. On or about May 18, 2016, Defendants Wilmington, Citibank, Mortgage Electronic Recording Systems, Inc. ("MERS") and Owen filed their Answer with Affirmative Defenses.  *See* Ex. 17.

On October 19, 2016, Plaintiff filed her Amended Verified Complaint to Quiet Title and For Declaratory Relief (the "Amended Complaint).  *See* Ex. 18.  The Amended Complaint asserts two causes of action against Defendants Wilmington, Citibank, Ocwen and "John Does" 1-5: (1) seeking to cancel/discharge the April 4, 2007 Mortgage of record as expired under the applicable statute of limitations, pursuant to CPLR § 213(4) and RPAPL § 1501; and (2) seeking a ruling that that the six-month "saving" provision of CPLR § 205(a) is unavailable to Defendants.[4]  *See* Ex. 18.  Defendants MERS, BNC Mortgage, Inc. and Chase Home Finance LLC are not named in the Amended Complaint and thus this action was discontinued as against them on October 19, 2016.

On or about July 20, 2017, this Court denied Defendants' motion to dismiss the Amended Complaint and issued a Civil Case Management Plan and Scheduling Order.  *See* Sandolo Decl., ¶ 37.[5]  Discovery being completed, Plaintiff now moves, pursuant to Fed. R. Civ. P. 56, for an Order granting summary judgment in her favor: (1) declaring that an action to foreclose on the April 4, 2007 Mortgage against the Property is barred by the applicable statute of limitations, CPRL § 213(4); (2) cancelling and discharging the time-barred April 4, 2007 Mortgage of record, pursuant to New York RPAPL § 1501(4); and (3) granting Plaintiff such other and further relief

---

[4] Defendants have admitted that CPLR § 205(a) is inapplicable.  *See* Dkt. #76.

[5] Defendants served their Answer to the Amended Complaint on June 25, 2018.

as to the Court seems just and proper.  For the reasons set forth herein, Plaintiff respectfully submits that this motion should be granted, in its entirety.

## ARGUMENT

## STATEMENT OF APPLICABLE LEGAL STANDARDS

### Summary Judgment Standard

Summary judgment is appropriate where there are no issues of material fact and the movant is entitled to judgment as a matter of law.  *See Del Norte v. WorldBusiness Capital, Inc.,* No. 14 Civ. 10143(CM), 2017 WL 4334005, at *6 (S.D.N.Y. 2017), citing Fed. R. Civ. P. 56(c).  Indeed, district courts are directed to award summary judgment where the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), quoting Fed. R. Civ. P. 56. "Summary judgment is a tool used by district courts 'to pierce the pleadings and flush out those cases that are predestined to result in a directed verdict.'"  *Indian Harbor Ins. Co. v. Dorit Baxter Skin Care, Inc*., 430 F. Supp. 2d 183, 187 (S.D.N.Y. 2006), quoting *Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir. 1997).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact.  *See id*., citing *Celotex Corp. v. Catrett*, 477 U.S. at 323.  In opposition, the nonmoving party "'must set forth specific facts showing there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (19860, quoting Fed. R. Civ. P. 56(c).  If the evidence is "merely colorable" or not sufficiently probative, summary judgment may be granted. *See id*.  Stated otherwise, "a party confronted with a motion for summary judgment has no choice

but to lay bare its proof, or the Court will assume that it has none." *DelNorte v. Worldbusiness*, No. 14 Civ. 10143, 2017 WL 4334005, at * 7 (S.D.N.Y. Apr. 5, 2017).

**The Applicable Statute of Limitations**

It hardly bears stating that statutes of limitation reflect and serve important values and public policies, perhaps succinctly stated best by one word: closure. The New York Court of Appeals has observed that "statutes of limitation serve the same objectives of finality, certainty and predictability that New York's contract law endorses. Statutes of limitation not only save litigants from defending stale claims, but also 'express a societal interest or public policy of giving repose to human affairs.'" *ACE Sec. Corp. v. DB Structured Prod., Inc*., 25 N.Y.3d 581 (2015), quoting *John J. Krasser & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979).

In New York State, the statute of limitations for a mortgage foreclosure action is six years. *See* CPLR 213(4); *see also, Deutsche Bank National Trust Company v. Gambino*, 153 A.D.3d 1232, 1234 (2d Dep't 2017); *Costa v. Deutche Bank Natl. Trust Co*., 247 F.Supp.3d 329, 340 (S.D.N.Y. 2017) (applying New York law). Generally, when a mortgage is payable in installments, separate causes of action accrue as to each installment, and the statute of limitations begins to run on the respective due date for each installment. *See, e.g., Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 983 (2d Dep't 2012). However, where the mortgagee elects to accelerate the debt and declare the entire mortgage balance to be immediately due and payable, the six-year statute of limitations begins to run on the entire mortgage debt at that time. *See EMC Mortgage Corp. v. Patella*, 279 A.D.2d 604, 605 (2d Dep't 2001); *Federal Natl. Mtg Assn. v. Mebane*, 208 A.D.2d 892, 894 (2d Dep't 1994). An election to accelerate the debt must be clear and unequivocal. *See Wells Fargo Bank, N.A. v. Burke,* 94 A.D.3d at 983*; Costa v. Deutche Bank Natl. Trust Co.*, 247 F.Supp.3d at 341 (collecting cases). Commencement of a foreclosure action and the filing of a lis pendens constitutes a valid election to accelerate the mortgage debt. *See,*

*e.g., Wells Fargo Bank, N.A. v. Burke,* 94 A.D.3d at 983; *Clayton Nat., Inc. v. Guldi*, 307 A.D.2d 982 (2d Dep't 2003).

Once accelerated, the statute of limitations continues to run on the entire mortgage debt and will expire six years after the date of acceleration unless the mortgagee validly revokes its acceleration, or "decelerates" the debt, thereby "re-setting" the statute of limitations on a foreclosure. *Kashipour v. Wilmington Sav. Fund Socy.*, FSB, 144 A.D.3d 985, 987 (2d Dep't 2016). But such "revocation should be clear, unequivocal, and give actual notice to the borrower of the lender's election to revoke in sum, akin to the manner [the lender] gave notice to exercise the option to accelerate." *U.S. Bank N.A. v. Crockett*, 55 Misc. 3d 1222(A) (N.Y. Sup. Ct. Kings Cty. 2017), citing *Bank of New York Mellon v. Slavin*, 54 Misc. 3d 311, 315 (N.Y. Sup. Ct. Rensselaer Cty. 2016); *EMC Mortgage Corp*., 279 A.D.2d at 606 (finding foreclosure action time-barred, holding that, "[a]lthough a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action did not constitute an affirmative act by the lender revoking its election to accelerate…").

As the Honorable Vincent W. Versaci, J.S.C., recently explained in *Citimortgage v. Ramirez*, 59 Misc.3d 1212(A) (N.Y. Sup. Ct., Schenectady Cty. Apr. 5, 2018):

> …to be effective in resetting the statute of limitations clock, such revocation must or deceleration must satisfy a five (5)-prong test: 1) the revocation must be evidenced by an affirmative act; 2) the affirmative act must be clear and unequivocal; 3) the affirmative act must give actual notice to the borrower that the acceleration has been revoked; 4) the affirmative act must occur before the expiration of the six (6) year statute of limitations period; and 5) the borrower must not have changed his or her position in reliance on the acceleration.

*Citimortgage*, 59 Misc.3d 1212(A), at *2, citing *Lavin v. Elmakiss*, 302 A.D.2d 638, 639 (3d Dep't 2003).

On a motion for summary judgment declaring a mortgage foreclosure action to be time-barred, the mortgagor bears the burden of establishing, *prima facie*, that such action is barred by the applicable statute of limitations. *See Citimortgage,* 59 Misc.3d 1212(A), at *3. Once met, the burden shifts to the mortgagee to establish that a foreclosure action is not time-barred, specifically to establish that a foreclosure action "is timely because it affirmatively revoked its acceleration of the mortgage debt before the statute of limitations expired, thus tolling the statute." *Id.* This burden is a heavy one. *See id.* ("[s]everal courts have addressed the heavy burden of proving an affirmative act sufficient to establish that the mortgage holder unequivocally intended to revoke its acceleration of the entire debt."), citing, *e.g. Lanvin v. Elmakiss,* 302 A.D.2d 638, 639 (3d Dep't 2003) (finding that the mortgagor failed to establish an affirmative act of revocation).

### POINT I:

### THE UNDISPUTED FACTS ESTABLISH THAT AN ACTION TO FORECLOSE ON THE APRIL 4, 2007 MORTGAGE IS TIME BARRED

A. <u>An Action To Foreclose On The April 4, 2007 Mortgage Is Time Barred</u>

It is undisputed that the debt underlying the April 4, 2007 Mortgage was accelerated, at the latest, on April 8, 2010 when Citibank initiated the 2010 Foreclosure Action. *See* S.M.F., at ¶ 9; *See, e.g., Clayton Nat., Inc. v. Guldi*, 307 A.D.2d at 982 (filing of summons and complaint and lis pendens accelerated the note and mortgage); *Kashipour,* 144 A.D.3d at 987 (date of acceleration evidenced by summons and complaint filed in prior foreclosure action). Accordingly, the six-year statute of limitations expired on April 8, 2016. Based upon these undisputed facts, Plaintiff has met her burden to establish that an action to foreclose on the April 4, 2007 Mortgage is time barred. S*ee U.S. Bank N.A. v. Barnett*, 151 A.D.3d 791, 792-93 (2d Dep't 2017); *Kashipour,* 144 A.D.3d at 987 (by submitting proof that the subject mortgage was accelerated six years prior to

commencement of foreclosure action and that they were in possession of the subject property, the "plaintiff's established, prima facie, their entitlement to judgment as a matter of law").

The burden now shifts to Defendants to demonstrate the existence of an affirmative act sufficient to establish that they validly revoked the acceleration of the underlying indebtedness, thereby "re-setting" the statute of limitations. *See Citimortgage*, 59 Misc.3d 1212(A), at *3. Because they cannot do so, Plaintiff's motion for summary judgment should be granted.

B. **Defendants Are Estopped From Arguing That The Discontinuance Of The 2010 Foreclosure Action Was Intended To Revoke Citibank's Prior Acceleration Of The Indebtedness Underlying The April 4, 2007 Mortgage**

Now that the time to commence an action to foreclose the April 4, 2007 Mortgage has expired, Defendants are trying to "save" the time-barred mortgage by contending that Citibank's discontinuance of the 2010 Foreclosure Action – contrary to the explicit representations made by Citibank in the state court resulting in the discontinuance – was actually a revocation of the acceleration of the indebtedness underlying the April 4, 2007 Mortgage. However, Defendants are estopped from taking this position by operation of the doctrine of judicial estoppel.

The doctrine of judicial estoppel or estoppel against inconsistent positions precludes a party from taking a position in one legal proceeding which is contrary to that taken by the same party in a prior proceeding. *See, e.g. Simon v. Safelight Glass Corp.,* 128 F.3d 68, 71 (2d Cir. 1997); *Davis v. Citibank, N.A.,* 116 A.D.3d 819, 820 (2d Dep't 2014), citing *Festinger v. Edrich,* 32 A.D.3d 412, 413 (2d Dep't 2006); *Matter of Edson v. Southold Town Zoning Bd. of Appeals,* 102 A.D.3d 687, 688 (2d Dep't 2013). The "twin purposes" of the doctrine are to protect the integrity of the judicial process and to avoid the risk of inconsistent results. *Davis v. Citibank*, 116 A.D.2d at 821; *Simon v. Safelight Glass Corp*., 128 F.3d at 71 ("courts invoke judicial estoppel as a means to 'preserve the sanctity of the oath' or to 'protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.'"), quoting *Bates v. Long Island R.R.* Co., 997 F.2d 1028,

16

1038 (2d Cir. 1993). Estoppel is applicable where the court in the prior proceeding accepted the claim at issue and rendered a favorable decision. *See Simon*, 128 F.3d at 72.

Under the undisputed facts presented herein, it is clear that Defendants are estopped from taking the position that Citibank's discontinuance of the 2010 Foreclosure Action was an affirmative act clearly and unequivocally manifesting its intent to revoke the prior acceleration of the indebtedness underlying the April 4, 2007 Mortgage. It is undisputed that, in moving to discontinue the 2010 Foreclosure Action, Citibank never informed the state court that it intended to revoke, rescind or withdraw its prior acceleration, *see* Ex. 7, but rather Citibank represented to the court that it simply sought to re-send the requisite Notice of Default and 90-day Pre-Foreclosure Notices, and to proceed with another foreclosure action. Specifically, Citibank stated:

> [Citibank] seeks to discontinue this action without prejudice and cancel the Notice of Pendency because [Citibank] is unable to proceed with its foreclosure action. This Court has found that the proof submitted by [Citibank] regarding its Notice of Default and 90-day Pre-Foreclosure Notices send to the Defendants, to be insufficient. [Citibank], at this time, is unable to obtain additional proof from the individuals that sent such notices to the Defendants that would further support [Citibank's] position that it took all necessary steps to foreclose on the Mortgage. Accordingly, [**Citibank] requests that this action be discontinued without prejudice in order for [Citibank] to recommence this action once a new Notice of Default and 90-day Pre-Foreclosure Notice is sent to the Defendant**.

S.M.F. ¶ 15 and Ex. 7, at ¶ 24 (emphasis added).

Further, Justice Walker clearly accepted this representation in granting Citibank's motion to discontinue the 2010 Foreclosure Action (over Plaintiff's opposition), holding that Citibank "**has plainly stated that the reason it is seeking a discontinuance is that despite its best efforts, it has been unable to obtain additional proof to establish service of the notice of default and 90-day notice. Therefore, [Citibank] seeks to discontinue the action and resend the notices**." *See* Ex. 8, at p. 4 (emphasis added).

Accordingly, Citibank's aforesaid representations to the court in the 2010 Foreclosure Action resulted in Citibank obtaining the relief it demanded from the court, as its motion was granted and the action discontinued, without prejudice. *See id.*   Accordingly, Defendants are estopped from taking the position that the intention of the discontinuance of the 2010 Foreclosure Action was not as stated, but something else entirely.  Indeed, such a claim is belied not only by Citibank's representations to Justice Walker, by also by the December 29, 2015 Statement and the delinquency notices sent to Plaintiff following the discontinuance of the 2010 Foreclosure Action. *See* Exs. 9 and 11.  These notices show that there was no intended reinstatement of the loan, and refer back to the date of default on which the 2010 Foreclosure Action was based. Clearly, the lender's intention was to comply with the court's notice requirements in the 2010 Foreclosure Action and start a new action after having done so, not to revoke acceleration of the debt. Defendants' failure to prosecute a timely foreclosure action after discontinuance of the 2010 Foreclosure Action should not permit Defendants to claim the intention of the discontinuance was anything other than as represented to the court.  Citibank (and its successors) cannot now change its position "simply because [its] interests have changed." *Festinger v. Edrich,* 32 A.D.3d at 413.[6]

Defendants are therefore estopped from now taking the position that the discontinuance of the 2010 Foreclosure action was intended to revoke acceleration of the indebtedness underlying the April 4, 2007 Mortgage, thereby "saving" the time-barred April 4, 2007 Mortgage.

---

[6] Because Wilmington, as assignee of the April 4, 2007 Mortgage, stands in the shoes of Citibank, it is equally estopped.  *See, e.g., Mortgage Electronic Registration Systems, Inc. v. Rambaran*, 97 A.D.3d 802, 804 (2d Dep't 2012) ("'[a]n assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities.'"), quoting *Arena Contr. Co. v. Sackaris Sons*, 282 A.D.2d 489, 489 (2d Dep't 2001).

C.  Discontinuance Of The 2010 Foreclosure Action Is Insufficient To Establish
An Affirmative Act Clearly And Unequivocally Revoking Acceleration

Even if, *arguendo*, this Court were to consider Defendants' contention that the discontinuance of the 2010 Foreclosure Action was intended to revoke acceleration of the debt underlying the April 4, 2007 Mortgage, Defendants still cannot establish an affirmative act clearly and unequivocally revoking acceleration because discontinuance, standing alone, is insufficient to demonstrate such revocation.  *See, e.g.*, *US Bank National Association v. Szoffer*, 58 Misc.3d 1220(A) (N.Y. Sup. Ct., Rockland Cty. 2017) (finding that discontinuance of prior foreclosure action did not revoke acceleration; plaintiff's foreclosure action time-barred); *BSD 265 LLC v. HSBC Bank USA N.A.*, No. 504656/16, 2017 WL 2778454, at *3 (N.Y. Sup. Ct. Kings Cty., June 27, 2017) (finding foreclosure action time barred, noting that "there is no controlling authority holding that the voluntary discontinuance of a foreclosure action, without more, constitutes an affirmative act revoking the acceleration of a mortgage debt").[7]

Perhaps most importantly, there is no provision in the April 4, 2007 Mortgage or Note whereby the lender or servicer is permitted to unilaterally revoke, rescind or withdraw acceleration of the indebtedness.  *See* Exs. 2 and 3.  There is no evidence that the parties entered into a settlement whereby the loan was reinstated, or a trial modification was tried, or that any and payments were made and accepted after acceleration of the indebtedness underlying the April 4, 2007 Mortgage; it is undisputed the foregoing did not occur.  Accordingly, Defendants' discontinuance of the 2010 Foreclosure Action, standing alone, is insufficient to establish

---

[7] The New York Court of Appeals has not held that the voluntary discontinuance of a mortgage foreclosure action constitutes an affirmative act revoking the acceleration of the underlying indebtedness.  *See, e.g., Zucker v. HSBC Bank, USA*, No. 17-CV-2192, 2018 WL 2048880, at *7 (E.D.N.Y. May 2, 2018) ("The New York Court of Appeals has not addressed whether the voluntary discontinuance of a foreclosure action constitutes an affirmative act revoking a prior acceleration").

19

deceleration of the underlying indebtedness sufficient to "re-set" or modify the statute of limitations.  *cf.* General Obligations Law § 17-105(1) ("A waiver of the expiration of the time limited for commencement of an action to foreclose a mortgage of real property … or a waiver of the time that has expired … if made after the accrual of a right of action to foreclose the mortgage and made, either with or without consideration, <u>by the express terms of a writing signed by the party to be charged</u> is effective…") (emphasis added); *see also US Bank National Association v. Szoffer*, 58 Misc.3d 1220(A), at *2; *BSD 265 LLC,* 2017 WL 2778454, at *3.

        Moreover, Defendants' claim is belied by their own statements and conduct.  Following discontinuance of the 2010 Foreclosure Action, Defendants affirmatively represented to Plaintiff that "your loan has been accelerated".  Ex. 9.  Conspicuously, there is no writing whatsoever to Plaintiff unequivocally stating that Defendants intended to revoke, rescind or withdraw the acceleration of the debt underlying the April 4, 2007 Mortgage (even if they could unilaterally do so).  *See BSD 265 LLC v. HSBC Bank USA N.A,* 2017 WL 2778454, at *7 (noting that the lender "has not produced any evidence that it sent [the borrower] a notice expressly revoking the acceleration and reinstating the loan").  The only evidence in the record specifically addressing "acceleration" of the underlying debt is that it remained accelerated after discontinuance of the 2010 Foreclosure Action.  *See* Ex. 9.  Defendants have failed to produce a single piece of paper delivered to Plaintiff stating affirmatively (let alone clearly and unequivocally) that they intended to revoke such acceleration.

        Indeed, consistent with the position that the underlying loan remained accelerated, after discontinuance of the 2010 Foreclosure Action, Defendants re-sent a Notice of Default and the 90-Day Notice to Plaintiff and then commenced the 2016 Foreclosure Action within six (6) years of the 2010 acceleration.  *See* Exs. 10 and 12.  The timing of these actions is consistent not only with

Citibank's representations to Justice Walker, but also with the understanding that the debt underling the April 4, 2007 Mortgage remained accelerated.

Moreover, even if, *arguendo*, the discontinuance of the 2010 Foreclosure Action was intended by Defendants to revoke acceleration, it cannot be said that such revocation was "clear" or "unequivocal" as required by law. *See, e.g.*, *U.S. Bank N.A. v. Crockett*, 55 Misc. 3d 1222(A), citing *Bank of New York Mellon v. Slavin*, 54 Misc. 3d at 315.  After the discontinuance of the 2010 Foreclosure Action, and after the December 29, 2015 Statement, Defendants equivocated with regard to their intention to revoke acceleration.  As a result, it was never made clear to Plaintiff that the loan was decelerated, or even how much was claimed due and owing.  Indeed, after discontinuance and after receiving the December 29, 2015 Statement, Plaintiff could not say whether the amount Defendants claimed was due under the April 4, 2007 Mortgage was more or less than a million dollars.  *See* Ex. 20 at pp. 36-38.  Thereafter, beginning in January 2011, Defendants sent Plaintiff monthly statements in different amounts, further clouding the issue.  *See* Ex. 11.[8]

On these facts, it simply cannot be concluded that Defendants "clearly and unequivocally" revoked their acceleration of the underlying indebtedness.  To accept Defendants' position would permit Defendants (and other lenders) to unilaterally extend the statute of limitations indefinitely, as a lender could file a foreclosure action, withdraw it prior to decision, file a new action, withdraw it prior to decision, file another action, and so on.  Such a result would essentially write the statute

---

[8] To the extent that Defendants seek to undermine the import of the December 29, 2015 by arguing that it was a computer generated form from the loan servicer, it bears noting that Ocwen is the lender's agent, with apparent and/or actual authority to bind the lender.  As such, Plaintiff had every reason to rely on Owen's statements as to the status of the loan.   Plaintiff should not be penalized for the Defendants' failure to communicate with one another as to the status of the loan.

of limitations out of existence, undermining the policies of finality, certainty and predictability upon which is based.

Such a result would be particularly inequitable where, as here, the first foreclosure action was discontinued, post-summary judgment, because the lender could not and would never be able to establish that it had served Plaintiff with a Notice of Default and Notice pursuant to RPAPL § 1304, conditions precedent to a mortgage foreclosure action.  *See* S.M.F., at ¶ 12 and Ex. 8. Likewise, the 2016 Foreclosure Action was dismissed for Defendants' failure to effectuate service of process over Plaintiff.  *See* Ex. 15.  Plaintiff should not suffer from Defendants' repeated failure to successfully prosecute their foreclosure actions within the statutorily prescribed time limitations and Defendants' efforts to unilaterally "re-set" or "re-write" the statute of limitations.

It must not be forgotten that Defendants' acceleration of the underlying indebtedness in 2010 also deprived Plaintiff of the right to make installment payments.  *See, e.g*., *Federal Natl. Mtge. Assn. v. Mebane*, 208 A.D.2d 892, 894 (2d Dep't 1994) ("Once the mortgage debt was accelerated, the borrowers' right and obligation to make monthly installments ceased and all sums became immediately due and payable.")  Accordingly, Plaintiff has not been entitled to and has not made any installment payments subsequent to acceleration, while the interest, fees and escrow balance on the loan have continued to grow.  It is therefore beyond doubt that Plaintiff changed her position in reliance upon Defendants' acceleration of the underlying indebtedness, precluding Defendants from unilaterally revoking such acceleration.  *See, e.g., Citimortgage*, 59 Misc. 3d 1212(A), at *5.

Plaintiff respectfully submits that she has satisfied her burden to establish that that the six-year statute of limitations period has expired, and that, on the undisputed facts presented herein, Defendants cannot satisfy their burden to demonstrate the existence of an affirmative act sufficient

to establish that they clearly and unequivocally revoked the acceleration of the underlying indebtedness.  An award of summary judgment in Plaintiff's favor is therefore warranted.

## POINT II:

### PLAINTIFF IS ENTITLED TO AN ORDER CANCELLING AND DISCHARGING THE APRIL 4, 2007 MORTGAGE

New York RPAPL § 1501(4) provides that, "[w]here the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage … has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons … to secure the cancellation and discharge of record of such encumbrance…"  RPAPL § 1501(4).  The statute further provides that, "[i]n any action brought under this section it shall be immaterial whether the debt upon which the mortgage or lien was based has, or has not, been paid."  *Id.*

 "A judgment issued pursuant to RPAPL Article 15 must 'declare the validity of any claim …established by any party,' and may direct that an instrument purporting to create an interest deemed invalid be cancelled or reformed."  *Costa v. Deutsche Bank National Trust Company*, 247 F.Supp.3d 329, 338 (S.D.N.Y. 2017), quoting *Barberan v. Nationpoint*, 706 F.Supp.2d 408, 416-17 (S.D.N.Y. 2010).  "The judgment must 'also declare that any party whose claim to an estate or interest in the property has been judged invalid, and every person claiming under him … be forever barred from asserting such claim.'"  *Id.*, quoting *Barberan*, at 417.

The undisputed facts herein clearly establish that Plaintiff has an interest in the Property, that an action to foreclose the April 4, 2007 Mortgage against the Property is time-barred, and that the April 4, 2007 Mortgage must be cancelled and discharged of record as against the Premises. *See* RPAPL § 1515; *Corrado v. Petrone*, 139 A.D.2d 483 (2d Dep't 1988); Exs. 1, 2, 3, 9 and 18.

23

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that this issue an Order granting summary judgment in her favor: (1) declaring that an action to foreclose on the April 4, 2007 Mortgage against the Property is barred by the applicable statute of limitations, CPRL § 213(4); (2) cancelling and discharging the time-barred April 4, 2007 Mortgage of record, pursuant to New York RPAPL § 1501(4); and (3) granting Plaintiff such other and further relief as to the Court seems just and proper.


Dated: White Plains, New York
       June 25, 2018

                                    BELOWICH & WALSH LLP


                                   __/s/ Joanna Sandolo_____
                                   Daniel G. Walsh (DW-7777)
                                   Joanna Sandolo (JS-9187)
                                   140 Grand Street, 8th Floor
                                   White Plains, New York 10601
                                   (914) 265-6068
                                   *Attorneys for Plaintiff Lynda Caneva*